**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue
Phoenix, Arizona 85004-4429
Facsimile No.:
Telephone: (602) 262-5311

Peter D. Baird, State Bar No. 001978
Direct Dial: 602 262-5364
Direct Fax: 602 734-3861
EMail: pbaird@lrlaw.com
Randy Papetti, State Bar No. 014586
Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
EMail: rpapetti@lrlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ceramic Protection Corporation of America, Inc., fka Alanx Wear Solutions, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ArmorWorks Enterprises, L.L.P., an Arizona Limited Liability Partnership,<br><br>Defendant. | No. 06-10962<br><br>**COMPLAINT** |

Plaintiff, Ceramic Protection Corporation of America, Inc. (hereinafter referred to as "CPCA"), by and through its undersigned counsel, files its Complaint for damages against ArmorWork Enterprises, LLP (hereinafter referred to as "ArmorWorks"), and states as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1.  CPCA is a Delaware corporation having a principal place of business in Delaware.

2.  ArmorWorks is an Arizona Limited Liability Company maintaining its principal place of business in Arizona and whose members are citizens and residents of Arizona.

3.  This Court possesses subject matter jurisdiction over this controversy as the parties are of diverse citizenship and the instant cause of action seeks damages in excess of $75,000.



4.   Venue is proper in this judicial district as the Defendant resides in Arizona.

## GENERAL ALLEGATIONS

5.   CPCA, formerly known as Alanx Wear Solutions, Inc. ("Alanx") is an industry leader in the production and manufacture of ceramic material for industrial and military use, including but not limited to the manufacture of ceramic plates which are incorporated into body armor.

6.   ArmorWorks is in the business if producing body armor panels using ceramic materials such as those manufactured by CPCA.

7.   A body armor panel consists of a ceramic plate, such as those produced by CPCA, onto which is bonded ballistic materials in order to create the finished panel.

8.   In order to be sold to the United States Military, body armor panels must undergo "first article testing" ("FAT") to ensure that they meet the required specifications. Until early 2004, the United States Military's specifications for body armor panels were known as "SAPI". Thereafter, the United States Military converted to "enhanced" SAPI ("ESAPI") specifications. From the perspective of the manufacture of ceramic plate for use in body armor panels, the primary distinction between SAPI and ESAPI is the thickness of the ceramic plate.

9.   As of 2001, Alanx was primarily engaged in the production and manufacture of ceramic material for industrial uses. Aware of the potential for using its reaction bonded silicon carbide ceramic material for body armor, Alanx began providing samples to Protech, a body armor manufacturer, for testing.

10.   The initial test results were encouraging and Protech introduced Alanx to ArmorWorks to explore the potential for incorporating Alanx's reaction bonded silicon carbide ceramic materials into body armor panels.

11.   In January, 2002, Alanx's began providing samples of its reaction bonded silicon carbide ceramic materials to ArmorWorks for testing. After favorable initial testing, ArmorWorks and Alanx entered into a Memorandum of Understanding which assumed an April 1, 2002 FAT certification under SAPI specifications after which Alanx

would begin supplying ceramic plates to ArmorWorks for the manufacture of body armor panels. True and correct copy of the Memorandum of Understanding is attached as Exhibit "1". If FAT certification was secured by April 1, 2002, Alanx was to ramp up its production of ceramic plates so that ArmorWorks would begin purchasing a minimum of 4,000 plates per month at a minimum by July, 2002.

12. Due to deficiencies in ArmorWorks' ballistic material and bonding technology, ArmorWorks advised Alanx that testing conducted by ArmorWorks indicated that FAT certification could not be obtained by April 1, 2002.

13. Alanx continued to supply sample reaction bonded silicon carbide ceramic plates to ArmorWorks throughout 2002, but was continuously advised that test results were unfavorable. Despite repeated requests by Alanx for access to Armor Work's testing data so that Alanx could work together with ArmorWorks to correct the deficiencies in ArmorWorks' ballistic materials and bonding processes, ArmorWorks declined to share such test data.

14. On or about October, 2002 ArmorWorks finally permitted Alanx to observe testing on the sample body armor panels at an independent test facility. Based upon Alanx's observations, Alanx concluded that ArmorWorks' technological deficiencies would not be cured in the near future unless Alanx modified the materials used in its ceramic plates.

15. After research and development, Alanx began producing sample plates made of reaction bonded boron carbide and supplied the plates to ArmorWorks for testing. The testing was immediately favorable and, as a result, Alanx at considerable expense and effort, modified its production processes to produce reaction bonded boron carbide ceramic plates.

16. Because of increased expense in research and development, as well as the increased expense of the new materials, on January 17, 2003, Alanx and ArmorWorks entered into an Addendum to the Memorandum of Understanding, modifying pricing and

3

setting forth a tentative delivery schedule. A true and correct copy of the Addendum to the Memorandum of Understanding is attached as Exhibit "2".

17. On or about February 20, 2003, almost one year late, ArmorWorks body armor plates using Alanx's reaction bonded boron carbide ceramics were qualified under FAT and ArmorWorks began, for the first time, placing orders with Alanx and producing SAPI body armor panels for sale to the United States Military.

18. At approximately the same time that the ArmorWorks' body armor panels using Alanx's reaction bonded boron carbide ceramic plates qualified under FAT, ArmorWorks entered into a licensing agreement with Protech allowing Protech to use ArmorWorks' technology in exchange for a royalty.

19. During 2003, Alanx began increasing its production volume of reaction bonded boron carbide plates using its existing manufacturing processes, known as "process A". However, process A proved to be cumbersome and slow in production of reaction bonded boron carbide plates, and Alanx, at significant expense, began developing a new manufacturing process which was designated "process B". Process B is the proprietary technology of CPCA, formerly known as Alanx.

20. Throughout the remainder of 2003 and into 2004, Alanx continued to increase its process A production while simultaneously developing and bringing on line its process B techniques. Process B produced greater volumes of reaction bonded boron carbide plates over a shorter time.

21. In October, 2003, Alanx began providing ArmorWorks with process B sample plates for testing. However, due to deficiencies in ArmorWorks' ballistic materials and bonding technologies, ArmorWorks was never able to certify body armor panels using Alanx's process B plates under FAT for SAPI specifications.

22. During 2004, ArmorWorks began providing Alanx's process B ceramic plates to Protech, its licensee, for testing. Protech quickly obtained FAT certification using Alanx's process B plates for "heavy" SAPI specifications, a specification also approved for use by the United States Military.

23. In late 2004, ArmorWorks began placing orders with Alanx for process B ceramic plates for resale to Protech.

24. On September 3, 2004, Ceramic Protection Corporation, a Canadian company, entered into an agreement to acquire all of the outstanding shares of Alanx. Alanx was subsequently re-named Ceramic Protection Corporation of America, Inc.

25. As of January, 2005, CPCA was providing ArmorWorks with process A ceramic plate and was also shipping process B ceramic plates to ArmorWorks for resale to Protech.

26. In early, 2005, ArmorWorks encouraged CPCA to increase its process A production, which CPCA did at considerable expense.

27. Upon information and belief at the time ArmorWorks requested CPCA to increase its process A production, ArmorWorks was aware that the United States Military was modifying its specifications and would be ceasing purchases of SAPI body armor panels in favor of body armor panels for a new "enhanced" SAPI specification ("ESAPI").

28. As a result of the United States Military's shift from SAPI to ESAPI, in April, 2005, Protech ceased ordering process B SAPI plates, leaving CPCA with significant excess production capacity.

29. ArmorWorks, however, continued purchasing a lesser amount of process A plates under the outmoded SAPI specifications through August, 2005.

30. Despite being caught off guard by the shift from SAPI to ESAPI, as a result of ArmorWorks' failure to advise CPCA of the change in specifications, CPCA immediately began modifying its process B production to comply with the new ESAPI standards.

31. In May, 2005, Protech qualified under FAT for body armor sales under "heavy" ESAPI specifications using CPCA's process B plates.

32. On March 18, 2005 in anticipation of the expiration of the Memorandum of Understanding, ArmorWorks and CPCA entered into a Supply Agreement, a true and

5



correct copy of which is attached hereto as Exhibit "3". The new Supply Agreement modified product pricing and required ArmorWorks to purchase a minimum of 8,000 ceramic plates per month.

33. Due to deficiencies in ArmorWorks' ballistic materials and its bonding processes, ArmorWorks was never able to qualify under FAT for ESAPI sales using CPCA's process B plates.

34. ArmorWorks immediately breached the Supply Agreement by failing to purchase the minimum quantity of plates required by the Supply Agreement, para. 4(a).

35. As a result of ArmorWorks breach of the Supply Agreement by failing to purchase requisite minimum quantities of plates, CPCA was left with significant dormant production capacity.

36. On or about July 22, 2005, ArmorWorks finally qualified body armor panels under FAT for "heavy" ESAPI specifications, months after Protech had qualified.

37. Despite repeated requests, ArmorWorks continued to fail to place firm orders for the minimum required quantities of CPCA's ceramic plates in breach of the Supply Agreement. ArmorWorks was warned that if it continued to fail to meet its minimum obligations under the Supply Agreement, CPCA would be forced to seek other purchasers for its products.

38. In order to mitigate its significant losses resulting from ArmorWorks failure to purchase the minimum quantities of ESAPI plates required under the Supply Agreement, CPCA began selling ESAPI plates to Armor Holdings, another armor panel manufacturer. Armor Holdings qualified body armor panels under FAT for "in specification" ESAPI immediately, a specification that ArmorWorks was never able to meet using the same plates. However, Armor Holdings would only agree to purchase CPCA's ESAPI plates at a price less than that provided for in the ArmorWorks Supply Agreement causing CPCA to incur additional losses.

39. Notwithstanding the Supply Agreement with Armor Holdings, CPCA was and is capable of satisfying ArmorWorks orders for ceramic plates.

6

40. In August, 2006, ArmorWorks demanded an audit of CPCA's production processes, purportedly to ensure quality control and refused to take delivery of plates until the audit was conducted. CPCA allowed the audit to take place.

41. At the same time, ArmorWorks had failed to make payment on several outstanding invoices. On September 7, 2006, CPCA demanded payment on the outstanding invoices. See Exhibit "4".

42. In response, on September 7, 2006, ArmorWorks transmitted correspondence to CPCA advising that it intended to return approximately 19,000 ESAPI plates representing in excess of two months of shipments. A true and correct copy of this correspondence is attached as Exhibit "5".

43. However, the correspondence from ArmorWorks fails entirely to identify any defect or variation from specification that would justify returning the plates pursuant to the provisions of the Supply Agreement and otherwise was not consistent with the obligations imposed upon ArmorWorks by the Agreement.

44. Later that same day, ArmorWorks transmitted correspondence to CPCA unilaterally terminating the Supply Agreement, notwithstanding that it was to remain in effect through March, 2007. A true and correct copy of the termination letter is attached as Exhibit "6". ArmorWorks' termination letter is entirely unjustified and does not comply with the termination provisions of the Supply Agreement.

45. All conditions precedent to suit have been satisfied.

## COUNT I- BREACH OF CONTRACT

46. CPCA restates and re-alleges the averment contained in paragraphs 1-45 and incorporates the same by reference herein as if fully stated.

47. The March 18, 2005 Supply Agreement is a binding contract under which ArmorWorks owed CPCA specific and definite duties and obligations.

48. ArmorWorks has breached its express and implied duties and obligations under the Supply Agreement by:

7

      (a)    failing to order the minimum quantities of plates required under the provisions of the Supply Agreement;

      (b)    failing to make payment on outstanding invoices for ceramic plates delivered by CPCA to ArmorWorks pursuant to the Supply Agreement;

      (c)    suspending CPCA's deliveries of ceramic plates to ArmorWorks without cause;

      (d)    refusing to perform under the Supply Agreement by failing to place orders with CPCA;

      (e)    unilaterally terminating the Supply Agreement without cause or justification;

      (f)    failing to act consistently with its duty of good faith and fair dealing.

49.    As a direct and proximate result of ArmorWorks breaches of the Supply Agreement, CPCA has sustained significant damages far in excesses of $75,000 including but not limited to loss revenues and profits and other consequential damages.

WHEREFORE Plaintiff Ceramic Protection Corporation of America, Inc. demands judgment against ArmorWorks Enterprises LLC for damages, together with such other and further relief as the Court may deem just and appropriate under the circumstances.

DATED this 8th day of September 2006.

                        LEWIS AND ROCA LLP

                        By s/ Randy Papetti  
                            Peter D. Baird  
                            Randy Papetti  
                        Attorneys for Plaintiff

LEWIS AND ROCA LLP LAWYERS